everyone on this snowy morning. We have four cases to hear and we will start with United States v. Torres which is case number 18-2026. Mr. Pori, you may proceed. Thank you, your honor. May it please the court, Ms. Messick. Your honors, the simple indisputable truth of this case is that on the morning of September 26 2016, New Mexico State Police Officer Nathan Lucero measurably extended the duration of a traffic stop for reasons which were completely unrelated to the purposes of the stop. About six minutes into a stop for speeding, Officer Lucero quit riding a ticket and detoured his investigation to question Mr. Torres's passenger for almost a minute about things that had absolutely nothing whatsoever to do with the offense of speeding. We respectfully submit that either the court meant what it said in Rodriguez v. United States or the words measurably extend are a meaningless victim to the exigency of punishing the possession of 38 pounds of methamphetamine. The district court erred as a matter of law for three reasons. One, Officer Lucero did in fact unconstitutionally extend the duration of the traffic stop. Two, Mr. Torres was unlawfully detained without reasonable suspicion. And three, Mr. Torres did not and could not freely and voluntarily consent to a search of his car after Officer Lucero told him that failing consent, Officer Lucero would deploy a About six minutes into the stop, told Mr. Torres that he was going to go check the vehicle identification number. That was a pretext. That was a ruse because as the officer freely admitted, he only checked the vehicle identification for a couple of seconds and even in his own habit and custom, he couldn't possibly check the last four numbers of one VIN and compare it to another in a couple of seconds. Mr. Pori, up until that point, the officer noted a strong smell of air freshener, an excessively and increasingly nervous Mr. Torres, unusual travel plans, and a suggestion just by looking in to the to the car without sticking his hand or his head in there that it appeared that Ms. Guerrero was fainting sleep. Now are those four things in the aggregate enough to give reasonable articulations? It's an excellent summary of the facts, Judge Murphy, and we respectfully submit that they're not. The reason for that is those assertions are belied by the record. Officer Lucero said that he noticed an overwhelming, overpowering, excuse me, overpowering scent of air freshener, but there was only one air freshener discovered in the car at any point during the search. He talked about Mr. Torres as being excessively nervous and although this court has condemned that in isolation because he doesn't know Mr. Torres, he doesn't know how nervous he might be, when you look at the actual dash cam video of the stop, Mr. Torres is not shaking, he's not sweating. Indeed, as the testimony provided by our own witness confirmed, there was no sign of nervousness apparent on the video. And a two-day vacation to Amarillo without hotel plans, as even the district court conceded, is not enough to establish probable cause in isolation. So, and the suggestion that Mr. Torres could consent to this questioning and to this VIN inspection is belied by the simple fact. Well, he doesn't have to consent to the VIN inspection. He didn't, and he couldn't, because he was not free to leave. The traffic stop was not over, he not signed the ticket. You didn't talk about the travel plans or Ms. Guerrero fainting sleep. So, the district court did not talk about that, but again, those seem to me after-the-facts rationalizations that are belied by the record. And I think that if you're going to say... How could they be after-the-fact when the officer questioned Mr. Torres and his passenger at least two times each about the travel plans? So, it doesn't seem like it's after-the-fact, it was in the moment that the officer seemed to be concerned about the plans. It's important that we review this step-by-step, because if the officer did measurably extend the stop without reasonable suspicion, then whatever he discovered after that cannot provide the sufficient basis for the detention. Well, I suppose then, then we need to know at what point was the stop extended in an before the ticket was issued, if I understand your brief correctly. Is that... Your Honor... Am I reading it correctly? Yes, Your Honor. I mean, the constitutional violation was ongoing, but the case comes down to this. As just... Well, okay. I just want to know when we enter into what you first happen in your view. When the officer said he was going to check a VIN and didn't check a VIN. When the officer said he was going to go check a vehicle identification, when he stopped riding a ticket and said he was going to go check a vehicle identification number, and then didn't do that. Or did that for only a couple of seconds. Well, how do we know that he didn't do that? I mean, there's on the video, he goes and looks at the windshield and looks at the point, which is, unless the officer had probable cause based on these four factors of travel plans, air freshener, nervousness, and I forget the fourth one. Fainting sleep. Fainting sleep. Thank you, Justice Murphy. At that point, the officer, if without that reasonable suspicion, unless these things are truly innocent, or unless these things are supported by the record, unless the what he did was measurably extend the traffic stop. And I think both Judge Browning and this court and all courts since Rodriguez are struggling to define the term measurably extend. But the simple fact remains that if you are not riding a ticket for speeding, or pursuing an investigation that's related to speeding, and you detour to be like, I think I'll go on a fishing expedition. I think I'll question this person who's fainting sleep. And fainting sleep, I mean, it's in the category of nervousness. How do you know if she's fainting? But you're challenging what's in the record is an observation. And what I want you to do is to do this. First of all, I would like you to rely on cases and tell us why four aggregate things like that do not constitute reasonable, articutable suspicion. Because I will concede the cases are all over the place. And are these four things enough? Anything gathered together in an officer's opinion seems to be enough. So that certainly nervousness. We're not talking about the nervousness. Is that enough? No. Because the officer doesn't know whether or not Mr. Torres is necessarily nervous, or whether his nervousness is the same as anyone who is removed from a car and told to step back. I don't want to get back into that. I'm asking you this, very straightforward. If those four things are facts, do they establish reasonable, articutable suspicion? And if you have case law indicating no, I'd like to hear it. I submit that they do not, for the same reason that the cases in this circuit about nervousness are legion. Nervousness by itself is not sufficient. I agree. So if you add nervousness and unusual travel plans, does nervousness suddenly become sufficient? And there is no case law to address that. Certainly there is case law that says the totality of the circumstances. But that's why I'm not trying to be facetious. You will acknowledge that the case law says that the establishment of reasonable, articulable suspicion is not intended to be an onerous standard. Absolutely. Okay. Let me just throw out a couple of cases. I think we're, I think what we'd like to hear is how your case matches up. And there are multiple factors, but the unusual travel plans, we have a few cases from the Tenth Circuit on unusual travel plans. How does your case stack up against a case like Wood or a case like Lopez, which had unusual travel plans, plus other things? You've got these four, four factors you want to rely upon, but but now we need to have a little more help in terms of how they match up against their case. I guess what I'm struggling to say is, let's take for instance, a strange plan. The case on that is Simpson, 609 F3rd, 1140. That's not enough by itself. Simpson. An overly ambitious travel plan, I think that's Lopez, 849 F3rd at 924. So I think when we talk about each of these things in isolation... Well, wait a minute. Let's go back to Lopez for a minute. There, the plan was to go from California to Kansas or Nebraska. They weren't quite sure where. I think that they were trying to come to the help of a relative who was an alleged victim of some kind of abuse. How does your case compare to that case? He's not coming to the help to rescue a sister who's being beaten by her intimate partner. Yeah, on the other hand, they didn't even know which state she was in. That seemed a little unusual. You know, and yet, you know, the cases that we cite are on page 34 of our brief. Driving more than 600 miles from Nashville to Tulsa, Oklahoma for work after spending the week. I mean, we're trying to categorize people's plans as suspicious or unsuspicious, but the variables are as infinite as the number of people who take trips. And I go to Amarillo, Texas, which on the record, there's a suggestion that it's not the garden spot of America. To do so, 30 hours round-trip for the purpose of staying there for 48 hours for R&R. Are those odd travel plans? Is it a trip that you and I might take? Perhaps you know, perhaps me? Absolutely. I'm the type of person who loves to drive. I love to drive in places that I've never been before. We also know from the record that Mr. Torres has his own jean company and that much of the luggage in the vehicle were samples of his product. So this is the type of driving a traveling salesman would do. Is this unusual? Is it not the garden variety? We planned our trip for two weeks and we had every part of our luggage. Absolutely, it's not that. But again, for the reasons... Well, let me ask you the other question I was going to ask. That is, do you agree that if we rule against you and say that these four factors establish reasonable, articulable suspicion that the case is over and it should be affirmed on the district court's decision? I don't think that... I think the sad answer is yes. If you're going to say that yes, he measurably extended the stop, but in six minutes between looking at the travel plans, nervousness, air freshener, and a woman... and the feigning sleep is another example, Judge Murphy. I mean, on the one hand, it's like this is so unusual. Why would they drive all night? And yet we have a person in the back seat sleeping. Oh, she wasn't really asleep, but she drove all night. I mean, at some point, what I'd like to leave the court with is that the court knows that none of these factors by themselves... Can I just ask you a record question? When exactly did he smell the air freshener? He doesn't say. There's a reference later when they... That's probably why I asked that. Right, no, and I mean, and the thing about an air freshener is there's only one air freshener. And if anyone's ever smelled or had the unpleasant experience of smelling, say, Axe body spray, there's certain chemical senses that are offensive to us older folk that are not so offensive to the young folk, and that may be overwhelming or overpowering. Okay, I understand your argument on the air freshener. Moving on. With a minute remaining. If we think that the reasonable suspicion question is close, then why shouldn't we defer to the officer's ability to distinguish between innocent and suspicious actions, as we've said in our other cases? Because the factual basis for the reasonable suspicion is not apparent from the record. It seems invented. I just asked if it's a, if we think it's a close issue. I think, again, to Justice Murphy's question, if you believe that in six minutes these four factors are sufficient to establish reasonable suspicion, there's nothing more to say. But if you look at the record, and you realize that this person interrupted the writing of a speeding ticket and measurably extended the stop, the decision must be reversed. And I'd like to save the 27 seconds for rebuttal, please. Good morning, and may it please the Court. Counsel, my name is Paige Messick. I represent the United States. Mr. Torres claims that his traffic stop was 40 seconds too long, and that that entitles him to the suppression of the nearly 40 grams of methamphetamine that he was transporting in his trunk at the time of the stop. This argument has a number of problems. Now, that's the pre-ticket detention argument, right? The 40 second. That's right. Okay, but that's not the only detention argument he's making. No, he's also argued that he wasn't detained upon reasonable suspicion at the end of his traffic stop, after he had been asked to... May I ask you a few more questions? Right. He's also... Could I just ask you then, do you agree that Mr. Torres was detained when Officer Lucero told him he was going to bring in a dog to sniff the car? Yes. Would you say he was detained then? Yes. All right. But I also assume you would say he had reasonable suspicion then. Absolutely. Okay, and was the reasonable suspicion based on any factors other than the ones we've already been discussing this morning? Yes, it was. Those factors that Judge Murphy listed earlier, all of those existed from nearly the beginning of the stop, before Officer Lucero even went to check the VIN. But as the stop goes on, from that point where we've already got those four, reasonable suspicion only continues to grow. So, first, Mr. Torres's level of nervousness continues. It doesn't abate as the officer would expect, as he's getting more used to the traffic stop. It continues, and it increases. When he handles the citation, his hand is shaking and the officer can observe that. The travel plans get weirder and weirder as this goes on. He says, but why Amarillo? And Torres doesn't answer that question. Instead, he kind of says, well, we might go to Albuquerque too, or we might go to Albuquerque instead. At this point, they are mere miles from Albuquerque, and he hasn't mentioned anything about Albuquerque so far. And then he said, actually, I don't know much about either or. And then Officer Lucero goes to talk to Ms. Guerra some more, and she doesn't mention it. You're talking about the second time. The second time after. Right, so this is all before the very end, the canine bit. And he talks to her, and she doesn't mention anything about going to Albuquerque. And he says, come on, why Amarillo? And she says something about family or friends, or family friends in Amarillo. And then Officer Lucero goes back to talk to Torres again. Hey, do you have any family in Amarillo? No. Doesn't mention anything about knowing people in Amarillo. And there's some confusion about how long they plan to stay there. So the traffic plans, or the travel plans, were strange from the get-go. But stranger than in cases where we haven't found reasonable suspicion based on unusual travel plans? I do think stranger. Now how about helping us out with the cases? You know, we have to pay attention to those, and compare them to this one. And if you could help us out, we'd appreciate it. Of course. Now I think that the best that, the most helpful thing in prior cases, just to look at these particular factors. Has the court ever recognized unusual travel plans as contributing to reasonable suspicion? Yes. Has it recognized air fresheners contributing? Yes. Each of the factors that we're relying on here have been recognized as contributing in some degree to reasonable suspicion in the case. I don't think that there is a particular shining case with the strangest travel plans. The Supreme Court certainly recognized that travel plans can be so strange as to provoke suspicion. There have been cases where the court has said, yeah, these travel plans were somewhat unusual, but in the absence of any other particular factor, it's not enough. And we wouldn't contend that these travel plans alone make reasonable suspicion. But there is no other case that takes all of these factors and addresses the weight of them all together, and whether that constitutes reasonable suspicion. And so here, we have half a dozen factors that this court has recognized independently can contribute to reasonable suspicion. So let me ask you a question. So Judge Matheson asked Mr. Pori about when the officer smelled the and that occurred? You know, I'm sorry, my impression was that he immediately did, but I was just flipping through the brief when that question came up, and I didn't see it in the moment right there. I mean, is it possible there's a failure of the record on that factor? What I'm getting at is Mr. Pori has all these items that are in isolation, don't get him, you know, arguably where he needs to be. But as you start taking some of these things away, such as the air freshener, maybe it gets closer. So, because I had an impression, I was wondering if the air freshener was maybe smelled when the officer went and leaned into the vehicle to talk to the passenger. I just checked what the district court found on this, and the district court's factual finding was that this happened when Lucero approached the vehicle to conduct the VIN check. He says Lucero approached the vehicle's passenger side window, observed the female passenger, was resting in the backseat, and noticed an overpowering odor of air freshener. And so it indicates here that the officer noticed this air freshener when he did approach the vehicle, but not necessarily he didn't do so until he was sticking his head in the window there. Okay, do you think that makes a difference for you? I don't think it makes or breaks the case. I think it helps, certainly. Right, doesn't help you though, the timing. Yes, if he is noticing this before he has allegedly prolonged the stop, then that certainly contributes to the reasonable suspicion he has to keep going at that point. Right. So I do think that that fact helps. I don't think that we would lack reasonable suspicion without it, but I think it strengthens it, and I think there's enough in the record to put that factor in the pre-extension box. Okay, and what do you think about the idea that the, you know, the basically the initial excessive detention was like 45 seconds worth of extra questioning. Did it seem like Judge Browning thought, wow, that's not very long. What do you think? Judge Browning, his opinion does contain some question about whether a short amount of time is really a measurable extension, but I didn't read his opinion to hold that that just wasn't long enough to care about. I don't think that he dismissed it as de minimis or anything like that. I agree with that because he went on very thoroughly and talked about everything else, but what do you think about the idea that 45 seconds, even if he really didn't have a need to talk to him for 45 seconds, is not enough? I think there are cases in which we could argue that a certain amount of extension is not actually measurable in the common meaning of the word. We haven't chosen to do that here because I think that it's getting close enough to a measurable extension, but I would say that if there is no de minimis extension, if you can really have a traffic stop extended unconstitutionally by 39 seconds, then it's going to be very difficult for a defendant to show that that very short extension is what caused the discovery of his evidence, and that is precisely the problem that Torres suffers from here. Those 39 extra seconds, if they were indeed not supported by reasonable suspicion at that point, have nothing to do with the discovery of the drugs in his trunk later. It is the defendant's burden to establish a causal link between his alleged Fourth Amendment violation and the evidence that he is contesting. Well, didn't he do so when the report indicates that, the report indicates that Ms. Guerrero's statements were important? Now, isn't that certainly adequate for the defendant to get over that hurdle? No, I don't think that it is, and I'm glad you brought that up because we have got in the record, by defendant's own choice, one of the six pages of that report. We don't know what the officer has said earlier about raising his suspicion, and at that point he says these are among the facts. Was the prosecutors at the potted plant? Couldn't the prosecutor put the remaining pages in? Well, sure, but I don't think at that point the prosecutor realized why the defense was caboting this introduction quite so narrowly. Well, too bad. But, okay, but he chose to put in one page. You don't know what is on those other pages, but you do know that on that one page, there have been previous pages where he's recounted other things that have happened, and then he says among the things that caused my suspicion are these four things, and then you can tell that that's not actually a strict problem. We can infer that these other factors were referenced, but we cannot infer that the adjective important preceded each one of those, but it did this one. So, doesn't that, isn't the standard for the minimalist standard, and then you go on to attenuation, right? Well, he needs to establish. I put in this page, it says it's an important factor. Haven't I met my burden of proof, and it's time for the government to step up and talk about attenuation, where the burden is theirs. I don't think so, that he can just get over that burden by showing that it was a factor, because a factor doesn't mean... An important factor, remember that adjective. Still, he said it was one important factor. No, he said it was an important factor. It was among the important factors. He didn't say, does it say among? It uses language that if not literally says something very close to, not limited to, but including, and then he lists four things. Some of those four things... Are you talking about pages that aren't part of the record, though? No, I'm talking about the one page that is part of the record, before his bullet point style list. Some of those things in the bullet points don't actually pertain to things that happened previous to that point in the stop. So I don't think you can say the officer is intending this as his chronological list of things that matter to him at that point. In his testimony, the defendant has a burden, could certainly have said, had you not talked to Garrett, would you have asked him to answer more questions? That would have been an easy thing to answer. Let me ask you a question about this characterization of important. Is it really the officer's subjective belief about importance that we should be worried about? This is a Fourth Amendment issue. Aren't we really thinking about what a reasonable officer would consider to be important, based on the evidence that we have? So does it really make much difference how Officer Lucero himself subjectively weighed these things? What's important is what a reasonable officer... Does a reasonable officer have reasonable suspicion? With a reasonable suspicion question, I agree that it's absolutely an objective test, and we believe that a reasonable suspicion was already present at that time. But I think for the but-for causation test, it would make sense to look at what that officer would have done otherwise, and I believe the court's cases have taken that approach. All right, I understand your point. Could I just ask you, what is the government's position on when Mr. Torres was detained? He was not... Well, he was detained during the initial traffic stop for the purpose of a traffic stop. No, I'm sorry, I should have been a little more clear. After the citation was handed back to him, at what point after that, in your view, was he detained? Not until the officer said, in response to his question, what if I don't consent? Well, in that case, I'm going to run my dog around your car, and if he alerts, I'm going to detain you. At that point, we agree he was detained, but not up until then. But not before? No, never before. Do you agree that Rodriguez establishes a pretty bright-line standard, and that is that regardless of the extent of the delay, that there's been a constitutional violation? I agree that Rodriguez establishes that standard subject perhaps to questions in a case where you could argue that it wasn't a measurable extension of a few seconds or something. I just... Rodriguez had been alive for at least a year, if not more, at the time the district court held its hearing. Why is that not just determinative for the district court, rather than getting into... Well, you know what I mean. Well, Rodriguez didn't say that travel plan questions are no longer part of the stop, and this court had held that an officer may extend a stop to ask that type of question. But I don't think that Rodriguez clearly says that these questions would have been an impermissible extension. That's probably not the easiest ground for the court to reach, but I don't think Rodriguez itself answers the question. Nothing for me. Thank you, counsel. Thank you very much. Now, did Mr. Pori have additional time? You've got 25 seconds. I think the case comes down to the fact that Judge Browning transmuted the measure of the extended standard of Rodriguez to excessively prolonged, and that's not the standard in this case. And I think the idea that causation was not met, these things followed one after the other in an unbroken line of causation so that the attenuation standard is the one that the court should have applied and did not. And with that, unless there are any questions, the matter will be submitted. Thank you, counsel. The case will be submitted, and counsel are excused.